```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x
EARL B. GARVIN,                                        :
                                                       :
                         Petitioner,                   :
                                                       :
        - against -                                    :      08 Civ. 05285 (PAC) (FM)
                                                       :
DALE ARTIST,                                           :      ORDER ADOPTING R&R
                                                       :
                                                       :
                         Respondent.                   :
------------------------------------------------------ x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 25, 2012

HONORABLE PAUL A. CROTTY, United States District Judge:

Earl B. Garvin ("Garvin") seeks habeas relief following his conviction on eight counts of Criminal Contempt in the First Degree, arguing that: (1) he was denied his Sixth and Fourteenth Amendment rights to a fair trial and to confront a witness when he was barred from the courtroom for part of the trial; (2) he was denied his Sixth Amendment right to call a witness on his behalf by being excluded from the courtroom; (3) he was denied effective assistance of counsel when his attorney failed to object to the admission of certain evidence and portions of the jury charge; and (4) his Sixth Amendment right to a jury trial was violated when he was sentenced pursuant to the New York persistent felony offender statute.

On December 8, 2011, Magistrate Judge Frank Maas issued a thorough and comprehensive, 34 page Report and Recommendation ("R&R"), recommending, after a complete review and rigorous analysis, that the Court deny Garvin's amended petition in its entirety. On February 24, 2012, Garvin filed objections to the R&R.

For the reasons that follow, the Court adopts Magistrate Judge Maas's Report and Recommendation. Garvin's petition is, therefore, DENIED.

1

**BACKGROUND**

I.      Factual Background[1]

In 1998, Garvin married Cheryl Leon, though the two did not begin living together until January 2002.  In July 2002, Ms. Leon moved out, due to marital problems.  Approximately one week later, Garvin was arrested on charges of possessing a loaded firearm and criminal contempt.  Ms. Leon was identified as a potential witness in the case against Garvin, but she never testified because Garvin entered a guilty plea in exchange for a maximum sentence of ten years in jail.  Justice Lewis Bart Stone conditioned Garvin's plea on compliance with an order of protection that was imposed for the benefit of certain person whom Garvin threatened, including Ms. Leon.

On July 3, 2003, Justice Stone sentenced Garvin to a fifteen-year term on the weapons charge and a concurrent two-to-four year term on the contempt charge.  The sentence was longer than the term agreed to because Garvin had violated the protective order by calling Ms. Leon several times.  Justice Stone then signed a permanent order of protection for the benefit of Ms. Leon, but Garvin refused to sign the order.  Justice Stone cautioned Garvin that further contact with Ms. Leon might result in additional charges, to which Garvin replied:  "Don't matter.  I'm going to die in jail.  They all going to die.  Let the record reflect that Mr. Garvin threatened each and every one of them mother fuckers and that that bitch whole family be killed.  Let the record reflect that your Honor . . . . [and turning to the Assistant District Attorney, Mr. Krutoy]: Fuck you too fagot.  Mr. Krutoy remember me.  I'm going to search for you until the day I die."

On July 8, 2003, Ms. Leon received a voicemail from Garvin threatening to kill her.  In November 2003, Ms. Leon received additional messages from Garvin threatening to kill her two children and any future (yet unborn) grandchildren.  While Garvin was not identified by name on

---

[1] Unless otherwise noted, all facts are taken from the R&R.

2

these messages, both the contents of the messages and records from Riker's Island, where Garvin was detained, confirm that Garvin was the caller.

Garvin was thereafter tried for violating the order of protection. At trial, Garvin was present for voir dire and the first day of testimony. On the second day of trial, however, Garvin refused to leave his holding cell because, as his counsel relayed, Garvin wanted Ms. Leon's criminal record so that she could be recalled to the stand for further impeachment, and, as his counsel surmised, to further prepare to testify himself. Justice McLaughlin refused to delay the trial, and instructed the jury to disregard Garvin's absence as he had a right not to be present. The prosecution called the court reporter from Garvin's plea before Judge Stone to read her transcript of that proceeding; and the prosecutor then read the transcript of Garvin's sentencing proceeding in the prior case. The People then rested.

Court officers were sent to advise Garvin that the People had rested and to instruct him that if he wanted to testify, he had to come to court immediately. As the court officers were escorting Garvin to court, Garvin head-butted an officer and was returned to his cell. After learning of Garvin's actions, Justice McLaughlin concluded that Garvin had voluntarily waived his right to be present during the trial.

In his jury charge, Justice McLaughlin continually emphasized that it was the People's burden to prove that Garvin was guilty beyond a reasonable doubt. The charge also contained two instructions that Garvin challenges, and which other courts have criticized. The first of these instructions, referred to as the "two inferences" charge, was given as follows:

> In a criminal case every accused is entitled to every factual inference in his favor reasonably drawn from the evidence. And where two inferences are drawn and both factual inferences are of equal strength and weight, one inference consistent with guilt and the other with innocence, any accused is entitled to a factual inference of innocence.

3

The second instruction relates to an election analogy:

> Now, when you get into the jury room there may be differences of opinion among you. It's not unlikely that in this jury trail, like most jury trials, the people from whom the electorate and the jury pool come being the same. You know that in an election, a close count of 50.1 beats 49.9 each time and you're stuck with the winner, who may be a [] loser and in some judicial elections for fourteen long years. Yet, that same pool that produces close elections has for over 235 years virtually all of the time produced unanimous verdicts.

On February 27, 2004, the jury returned a guilty verdict on eight counts of criminal contempt in the first degree. On April 12, 2004, Justice McLaughlin sentenced Garvin, as a Persistent Felony Offender ("PFO"), to a term of twenty-five years to life on each count to be served concurrently, but consecutively to the fifteen-year sentence that he was already serving.

II.     Procedural Background

On March 22, 2004, Garvin's counsel moved, pursuant to section 440.20 of the New York Criminal Procedure Law ("CPL"), to set aside Garvin's sentence, arguing that his sentence as a PFO violated Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. On September 8, 2004, Justice McLaughlin denied Garvin's motion, citing People v. Rosen, 96 N.Y.2d 329 (2001), in which the New York Court of Appeals concluded that the New York PFO statute did not violate Apprendi.

In May 2006, Garvin appealed his conviction to the Appellate Division, First Department, which, on February 27, 2007, unanimously affirmed the judgments of conviction. People v. Garvin, 830 N.Y.S.2d 549 (First Dep't App. Div., 2007). The Appellate Division held that evidence of Garvin's prior crimes and bad acts, except for one instance, provided proper background to the telephone calls, and that the single error—allowing evidence that Ms. Leon

4

knew of a particularly violent act for which Garvin was not convicted—"was harmless in light of the overwhelming evidence of [Garvin]'s guilt." Id. The Appellate Division further held that Garvin's PFO sentence was constitutional. Id. Garvin sought leave to appeal this decision to the New York Court of Appeals, which was denied on May 8, 2007. People v. Garvin, 8 N.Y.3d 984 (2007).

On May 5, 2008, Garvin filed a pro se motion, pursuant to CPL § 440.10(h), to vacate his conviction. In this motion, Garvin argued for the first time that: (a) he was denied effective assistance when his counsel failed to object to the "two inferences" jury charge and the election analogy charge; and (b) that his exclusion from the courtroom violated his due process right to confront a witness and to testify under the Sixth and Fourteenth Amendments.

On November 19, 2008, Justice McLaughlin denied Garvin's motion. The court, citing People v. Alvarez, 864 N.Y.S.2d 410 (First Dep't App. Div., 2008), held that neither of the challenged jury instructions were erroneous and, thus, counsel was not ineffective in failing to object to such instructions. The court further held that Garvin's motion to vacate could not raise issues relating to his exclusion from the courtroom, which he failed to raise on direct appeal. Garvin sought leave to appeal this decision to the Appellate Division, which was denied on April 29, 2009.

On April 27, 2008, Garvin filed a timely habeas petition, which was then stayed pending the conclusion of the state court proceedings, detailed above. On June 3, 2009, Garvin filed an amended petition, claiming that: (1) he was denied his Sixth and Fourteenth Amendment rights to a fair trial and to confront a witness when he was barred from the courtroom for part of the trial; (2) he was denied his Sixth Amendment right to call a witness on his behalf by being excluded from the courtroom; (3) he was denied effective assistance of counsel when his

5

attorney failed to object to the admission of certain evidence and portions of the jury charge; and (4) his Sixth Amendment right to a jury trial was violated when he was sentenced pursuant to the New York PFO statute.

## **MAGISTRATE JUDGE MAAS' R&R**

Magistrate Judge Maas concluded that two of Garvin's claims are procedurally barred and, thus, recommended that the Court dismiss Garvin's Confrontation Clause (Count One) and right to testify (Count Two) claims. Nonetheless, Magistrate Judge Maas considered all four of Garvin's claims on the merits and recommended dismissal.

I.  Garvin's Procedural Default

A federal court is precluded from reviewing a claim if the state court's prior denial of that claim rested on an adequate an independent state ground. The state court found that Garvin procedurally defaulted on his Confrontation Clause and right-to-testify claims, under CPL § 440.10(2)(c), by failing to raise the claims on direct appeal, despite having had the opportunity to do so. A state court's ruling on CPL § 440.10(2)(c) grounds constitutes an adequate and independent state ground. See Collier v. Lee, No. 08-CV-3441 (NGG), 2011 WL 2297727, at *5 (E.D.N.Y. June 5, 2011).

Garvin could only avoid procedural default by showing: (a) both cause for the default and actual prejudice resulting from a violation of federal law; or (b) that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Cause for default must be based on some circumstance external to the defense which prevented the petitioner from raising the claim. Murray v. Carrier, 477 U.S. 478, 488 (1986). Prejudice must be based on a showing that a prior failure to raise a claim has a substantial

injurious effect on the case. Id. at 494. To allege a fundamental miscarriage of justice, Garvin must establish proof of actual innocence. Coleman, 501 U.S. at 748–50.

Magistrate Judge Maas found that Garvin failed to show cause for default. (R&R 17-18.) Garvin admits he discussed his Confrontation Clause and right-to-testify arguments with appellate counsel, who apparently chose not to pursue such claims. (Id.) A "deliberate, tactical decision not to pursue a particular claim is the very antithesis of the kind of circumstances that would warrant excusing a defendant's failure to adhere to a State's legitimate rules for the fair and orderly disposition of criminal cases." Smith v. Murray, 477 U.S. 527 (1986). Further, Magistrate Judge Maas found that Garvin could not demonstrate prejudice or actual innocence, given the overwhelming evidence of guilt. (R&R 18.) Accordingly, he recommended that the Court deny Counts One and Two of Garvin's petition as procedurally defaulted. (Id.)

II. Garvin's Claims Fail on the Merits

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d).

A state court's factual determinations are presumed correct and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. Id. at § 2254(e).

### A. Absence from Courtroom

Magistrate Judge Maas determined that Garvin's absence from the courtroom during part of the trial was not a constitutional violation of the Fifth, Sixth, or Fourteenth Amendments. The Supreme Court has held that a defendant may forfeit the right to attend trial if his behavior threatens to disrupt trial. Illinois v. Allen, 397 U.S. 337, 343 (1970). While Garvin claimed that the altercation with court officers that precluded him from attending the trial was not his fault, Magistrate Judge Maas found that Garvin failed to present "clear and convincing evidence" that the state court's findings to the contrary were wrong. (R&R at 21.) Magistrate Judge Maas also held that Garvin's absence did not prejudice him as the only witness who testified in his absence authenticated and read the record from Garvin's prior guilty plea, for which Garvin was present. (Id. at 22.) The minutes from Garvin's prior sentencing, which were read by the prosecutor, had been admitted into evidence on a day on which Garvin was present in the courtroom, and he raised no objection at that time. (Id. at 22.)

The defendants' right to testify is grounded in the Constitution. Rock v. Arkansas, 483 U.S. 44, 51 (1987). Garvin claims that he wanted to testify so that the jury could compare his voice to the voice on the tape used in the People's direct case, and argues that the court and prosecutor conspired to keep him out of the courtroom so that he would be unable to establish his innocence. Magistrate Judge Maas concluded that Garvin's claim is "abject nonsense" as some of Garvin's threats were made in open court before Justice Stone, and the contents of the recordings (rather than the voice) make clear that Garvin is the speaker. (R&R 23-24.) Therefore, Magistrate Judge Mass recommended that any error by the trial court in keeping Garvin out of the courtroom—and thereby precluding his testimony—was harmless.

### B. Ineffective Assistance of Counsel

8

To prevail on his ineffective assistance of counsel claims, Garvin must show "(1) that counsel made errors so serious that defendant was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense." Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687-88, 693-94 (1984)).

Magistrate Judge Maas determined that Garvin's first argument was without merit. Defense counsel had "strongly" objected to the reading of the sentencing minutes during a pretrial hearing and noted his continuing objection during trial. (R&R at 26–27.) Accordingly, there was no need to (and indeed, reason not to) renew the objection again in front of the jury. (Id.) Since defense counsel's objections were sufficient to preserve the issue for appeal, see CPL § 470.05(2), defense counsel's actions were reasonably competent. (R&R 27.)

Both the Second Circuit and the New York Appellate Division have held that neither the "two inferences" charge, nor the election analogy charge, violates a defendant's constitutional rights. Jones v. Poole, 403 Fed. App'x 617, 619-20 (2d Cir. 2010) (holding that "though undesirable[, the charge] adequately conveyed the prosecution's burden to the jury and was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent."); People v. Alvarez, 864 N.Y.S.2d 410 (First Dep't App. Div., 2008). Since the jury charge was not constitutionally defective, defense counsel's failure to object to these charges did not prejudice Garvin. (R&R 31.)

    C. Sentencing Claim

Finally, the Second Circuit and New York Court of Appeals have determined that the PFO statute is constitutional and does not violate the Supreme Court's ruling in Apprendi. Portalatin v. Graham, 624 F.3d 69 (2d Cir. 2010), cert. denied, 131 S.Ct. 1693 (2011); People v.

9

Rivera, 5 N.Y.3d 61, 66-67 (2005).  Accordingly, Magistrate Judge Maas found that Garvin's habeas claim based on his PFO sentence was without merit.  (R&R at 33.)

## DISCUSSION

### A.  Standard of Review

In reviewing a report and recommendation, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Where a party makes a timely "specific written objection," the district court is obligated to review the contested issues *de novo*.  Greene v. WCI Holdings Corp., 956 F. Supp 509, 513 (S.D.N.Y. 1997).  "The district court may adopt those portions of the report to which no timely objection has been made, so long as there is no clear error on the face of the record."  Feehan v. Feehan, No. 09 Civ. 7016, 2011 WL 497776 at *1 (S.D.N.Y. Feb. 10, 2011).  Furthermore, a court does not have to accept, as true, conclusory statements made by the plaintiff, Iqbal, 129 S. Ct. at 1949, even in a pro se case, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

### B.  Objections to Magistrate Judge Maas' R&R

On February 23, 2012, Garvin filed objections to the R&R.  The Court addresses his substantive claim de novo.

1. Right to Confront Witnesses & Testify

With respect to Garvin's claims that he was denied his right to a fair trial, to confront witnesses, to call witnesses, and to testify, Garvin argues that: his right to cross-examination was violated when the prosecutor was allowed to read the sentencing minutes in the record (Objections 5-6); alternative methods of restraint that would have allowed Garvin to participation at trial—such as shackling and gagging him, allowing him further time to consult with counsel,

or setting up a video conference from his holding cell—should have been used (id. at 11-13); he should have been allowed to testify in his defense (id. at 15); that there was insufficient evidence that he was the caller on the messages (id. at 18-19); and that a voice expert should have been called (id. at 19).

None of Garvin's arguments address Magistrate Judge Maas's determination that Garvin is procedurally barred from raising these arguments here, having failed to raise these issues in his direct appeal in state court.  (See R&R 15-18.)  The Court has reviewed the R&R on this point for clear error and finds none.

2. Ineffective Assistance of Counsel

Garvin argues that ineffective assistance of counsel claims cannot be procedurally barred under CPL § 440.10(2)(c) (id. at 22); his opinion regarding which arguments should have been raised on direct appeal conflicted with his counsel's views (id. at 24-27); his counsel failed to investigate or call a voice analysis expert (id. at 19, 28); his counsel failed to adequately refute the prosecution's conclusions that he called and threatened his wife by demonstrating that pages from Riker's Island telephone records were missing (id. at. 18, 28); and that his counsel failed to object to the two inferences and election analysis jury charge (id. at 24-25).

Garvin cites Bell v. Miller, 500 F.3d 149, 154 (2d Cir. 2007), in arguing that ineffective assistance of counsel claims cannot be procedurally barred under CPL § 440.10(2)(c). (Objections 22.)  In Bell v. Miller, the Second Circuit noted, without affirming or denying, an Eastern District of New York opinion "conclud[ing] that [petitioner]'s ineffective assistance claim was not procedurally barred because N.Y.Crim. Proc. Law § 440.10(2)(c) is not an 'adequate' state ground because New York courts do not apply that rule regularly to ineffective assistance claims, as such claims often depend on extrinsic evidence and therefore must be

11

brought through collateral attack." Id. at 154 (citing Bell v. Miller, No. 05-cv-0663, 2005 WL 1962413, at *5 (E.D.N.Y. Aug.12, 2005)).  Even if Garvin's ineffective assistance of counsel claims should not have been subject to a procedural bar under CPL § 440.10(2)(c), his claims are still without merit.

To prevail on his ineffective assistance of counsel claims, Garvin must show "(1) that counsel made errors so serious that defendant was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense." Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687-88, 693-94 (1984)).  As to the first factor, a court must adopt the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  A petitioner will prevail on this point only if, "despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process . . . ." Id. at 696.  Under the second factor, a petitioner must show that "there is a reasonable probability that but for counsel's unprofessional errors, the result . . . would have been different." Id. at 692.

Garvin claims that his counsel was ineffective in deciding not to argue on appeal that Garvin's rights were violated when he was kept from the courtroom.  Garvin admits he discussed these arguments with appellate counsel, and claims to have expressed his desire to raise such arguments, which conflicted with his counsel's views.  In light of the record, Garvin has not shown that it was unreasonable for defense counsel to tactically decide not to argue that Garvin should have been allowed in the courtroom after he assaulted a court officer.  Indeed, the Supreme Court has held that a defendant may forfeit the right to attend trial if his behavior threatens to disrupt trial. Illinois v. Allen, 397 U.S. 337, 343 (1970).  Further, Garvin has not

shown that he was prejudiced by defense counsel's decision not to pursue this argument, given the prevailing Supreme Court precedent and the overwhelming evidence of guilt presented.  See People v. Garvin, 830 N.Y.S.2d 549 (First Dep't App. Div., 2007).

Next, Garvin argues that defense counsel should have further refuted the prosecution's evidence—by calling a voice expert, and pointing out gaps in the Riker's Island log book.  Such arguments and evidence, however, could not have refuted the prosecution's evidence of the threats Garvin made in open court in front of Justice Stone.  Accordingly, Garvin fails to show that he was prejudiced by counsel's actions, given the overwhelming and various forms of evidence against him.

With respect to the jury charge, since both the Second Circuit and the New York Appellate Division have held that neither the "two inferences" charge, nor the election analogy, violates a defendant's constitutional rights, Garvin was not prejudiced by counsel's failure to object to such instructions.   Jones v. Poole, 403 Fed. App'x 617, 619-20 (2d Cir. 2010); People v. Alvarez, 864 N.Y.S.2d 410 (App. Div. 1st 2008).

   3.   Sentencing Claims

Finally, Garvin argues that the PFO statute, as currently enacted, is unconstitutional, relying on the dissenting opinion in People v. Battles, 16 N.Y.3d 54, 60 (2010).  The Battles decision, in the New York Court of Appeals, however, upheld the constitutionality of New York's PFO statute, as did the Second Circuit, in Portalatin v. Graham, 624 F.3d 69 (2d Cir. 2010).

Garvin then argues that the issue may be taken up on a writ of certiorari by the Supreme Court. (Obj. at 38.)  The Supreme Court, however, has already denied a writ of certiorari on exactly this issue in Portalatin.  Portalatin v. Graham, 131 S. Ct. 1693 (U.S. 2011).

Garvin then argues that the issue may be taken up on a writ of certiorari by the Supreme Court. (Obj. at 38.) The Supreme Court, however, has already denied a writ of certiorari on exactly this issue in Portalatin. Portalatin v. Graham, 131 S. Ct. 1693 (U.S. 2011).

Accordingly, Garvin's objections on this point fail.

## CONCLUSION

For the foregoing reasons, the Court accepts and adopts the Report and Recommendation. Garvin's amended petition is, therefore, DISMISSED.

The Clerk of Court is directed to enter judgment and close this mater. Pursuant to 28 U.S.C § 1915(a), I find that any appeal from this order would not be taken in good faith.

Dated: New York, New York
April 25, 2012

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

Copies to:

Earl Garvin
DIN # 03-A-3850
P.O. Box 500
Elmira, New York 14901-0500

Paul Bernard Lyons
Assistant Attorney General
New York State Office of the Attorney General
120 Broadway
New York, New York 10271
Fax: (212) 416-8010

14